UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BARBARA KATZ,

                                                                                  11 Civ. 2540 (HB) (AJP)

                        Plaintiff,

                                                                                   **OPINION AND ORDER**

      -against-

ADECCO USA, INC., SAVOY CAPITAL,
INC., FRANCISCO LORENZO, and STEPHEN
HAZELTON,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      This is a discrimination dispute with claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*, and the New York City Human Rights Law ("NYCHRL"), Admin. Code §§ 8-107(1), (6), against defendants Adecco USA, Inc. ("Adecco"), Savoy Capital, Inc. ("Savoy"), Francisco Lorenzo ("Lorenzo") and Stephen Hazelton ("Hazelton") (collectively "Defendants"). Savoy is a private investment firm and Adecco is a recruiting firm hired by Savoy to help Savoy fill an open position. Before the Court is a motion for partial summary judgment brought by Plaintiff Barbara Katz ("Plaintiff") on Plaintiff's claim for discrimination under the ADA and NYCHRL based on Defendants' inquiries into her disabilities as part of the job application process. Also before the Court are two motions for summary judgment on behalf of Defendants, one brought by Adecco and the other brought by Savoy, Lorenzo and Hazelton (collectively "Savoy Defendants"). For the reasons set forth below, Plaintiff's motion is DENIED, Adecco's motion is DENIED and Savoy's motion is DENIED in part and GRANTED in part.

## I. BACKGROUND[1]

      In March 2010, Plaintiff interviewed twice for the position of executive assistant to Lorenzo, office manager, and office assistant in Savoy's New York City office, once with Hazelton and once with Lorenzo. Pl. 56.1 ¶¶ 13, 16. Hazelton is the managing director of Savoy,

---

[1] Additional facts are discussed where they are relevant throughout the opinion.

*id.* at ¶ 5, and Lorenzo is the chairman of Savoy. *Id.* at ¶ 4. Plaintiff then received Savoy's application from Adecco. *Id.* at ¶¶ 10, 19. A question on the form asked about Plaintiff's medical history. *Id.* at ¶ 23. Plaintiff informed Phyllis Ehrlich ("Ehrlich"), an Adecco recruiter, that she was a breast cancer survivor and told Ehrlich that the question was improper. *Id.* at ¶ 25. Ehrlich directed Plaintiff to fill out the form. *Id.* at ¶ 29. Plaintiff wrote, "There is nothing in my medical history that would interfere with my ability to perform my job responsibilities," *id.* at ¶ 34, and brought the form to her third interview with Hazelton and Lorenzo. *Id.* at ¶ 35. Plaintiff received a voicemail from Ehrlich in April indicating that she had not been selected. *Id.* at ¶ 37.

## II. DISCUSSION

### A. Legal Standard

Summary judgment shall be granted in favor of a movant where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A material fact "might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation and citation omitted). "The party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

### B. Summary Judgment is Granted on all Federal Claims Against Savoy Defendants

Savoy Defendants move for summary judgment on Plaintiff's ADA claims. Plaintiff concedes that Savoy did not employ enough employees to be bound by the ADA. Pl. Ltr., July 18, 2011.[2] Savoy Defendants' summary judgment motion is granted on Plaintiff's ADA claims.[3]

---

[2] Savoy filed a previous motion for summary judgment because it did not meet the statutory threshold under the ADA of having 15 or more employees. *Katz v. Adecco USA, Inc.*, 11 Civ. 2540, 2011 WL 2436670 (S.D.N.Y. June 16, 2011). I denied that motion without prejudice to Savoy renewing its motion after Plaintiff took limited discovery. *Id.*

### C. Medical Inquiry Claims

#### 1. Medical Inquiry Provisions of the ADA

Plaintiff argues that Adecco violated the ADA by providing her with Savoy's application form, Pl. 56.1 ¶ 19, which required candidates to "[l]ist all disabilities, procedures or operations." *Id.* at ¶ 18. The ADA prohibits such pre-offer inquiries: "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). Adecco does not contest that this question is a "technical violation" of the ADA, Adecco Opp. 8; however, it offers several arguments in opposition to Plaintiff's motion for summary judgment and in support of its own cross-motion for summary judgment.

##### a. Adecco is a covered entity

Regardless of whether Adecco was Plaintiff's employer or prospective employer, which it almost certainly was not, Adecco is a "covered entity" under the ADA as an employment agency. 42 U.S.C. § 12111(2); *see also EEOC v. Olsten Staffing Servs. Corp.*, 657 F. Supp. 2d 1029, 1032 (W.D. Wis. 2009) (noting that employers *and* employment agencies "are both 'covered entities' ") (quoting 42 U.S.C. § 12111(2)). An employment agency is "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer." 42 U.S.C. §§ 2000e, 12111(7). There is no dispute that Adecco is an employment agency.[4] *See* Adecco Answer ¶ 5; *see also Medina v. Adecco*, 561 F. Supp. 2d 162, 178 (D.P.R. 2008).

---

[3] The Savoy Defendants do not contest my exercise of supplemental jurisdiction under 28 U.S.C. § 1367, Savoy MSJ 2, nor do I find any reason not to exercise supplemental jurisdiction over the remaining claims against them. Pursuant to 28 U.S.C. § 1367(a)(1), supplemental jurisdiction is permissible for claims that are "so related to claims in the action within such jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." I have previously exercised supplemental jurisdiction over claims against individual defendants who, like Savoy, were not subject to the ADA, while entertaining claims against a corporate defendant who was subject to the ADA. *See, e.g.*, *Kudatzky v. Galbreath Co.*, No. 96 Civ. 2693, 1997 WL 598586, at *8 (S.D.N.Y. Sept. 23, 1997) (exercising supplemental jurisdiction over plaintiff's claims against individual defendants where plaintiff conceded that federal law did not apply to the individuals, but these claims arose "out of the same facts as plaintiff's sexual harassment claim and . . . their dismissal would result in duplicative litigation").

[4] Although Adecco objects that Plaintiff's Ex. 7 to her 56.1 Statement does not support the contents of paragraph 1, which states that "Adecco is an employment agency. . . .," Adecco does not dispute the statement in paragraph 1.

### b. There Are Genuine Issues of Material Fact Regarding Whether Adecco Violated the Medical Inquiry Provisions of the ADA

Adecco is prohibited from making disability inquiries. 42 U.S.C. § 12112(d)(2)(A). Adecco argues that it cannot be held liable for a medical inquiry that came from Savoy, Plaintiff's potential employer and Adecco's client. In support of this argument, Adecco argues that (1) "Adecco did not create Savoy's application," (2) "Adecco did not give advice to Savoy regarding its employment application" and (3) "Adecco neither asked for, nor was it ever given the completed Savoy application from Plaintiff." Adecco Opp. 3; Adecco's Counterst. ¶¶ 25-29.

Adecco argues that it should not be held liable for Savoy's medical inquiry. In *Olsten*, 657 F. Supp. 2d at 1038, the Court rejected the employment agency's argument that it could not be held liable for its discriminatory conduct because it was the result of customer preference. *Id.* The Court explained that this "view would allow employment agencies to avoid liability no matter how many discriminatory actions they took so long as the 'final decision' on placement could be attributed to the client." *Id.* As in *Olsten*, Plaintiff seeks to hold Adecco liable for "facilitat[ing] discrimination through its own acts and omissions."[5] *Id.*; *see also* Enforcement Guidance: Application of EEO Laws to Contingent Workers, 1997 WL 33159161, at *9 (Dec. 3, 1997) ("[T]he staffing firm is liable if it administers on behalf of its client a test or other selection requirement that has an adverse impact on a protected class and is not job-related for the position in question and consistent with business necessity.").

There are genuine issues of material fact regarding whether Ehrlich's actions on behalf of Adecco amounted to a discriminatory inquiry. Although Savoy created the application, Adecco delivered it to Plaintiff and Ehrlich repeatedly directed Plaintiff to complete the application over her protests that it was possibly unlawful and certainly improper; there are no major factual disputes that this is what transpired. Put another way, did Adecco make a discriminatory inquiry simply by giving Savoy's application to Plaintiff and directing her to fill it out even after Plaintiff objected.

---

[5] Although Adecco argues that *Olsten* is not on point because Olsten was both an employment agency and the plaintiff's employer, the Court made clear that Olsten was liable *both* because it was plaintiff's employer and because it was an employment agency, which is also a covered entity under the ADA. 657 F. Supp. 2d at 1032.

### c. Plaintiff Need Not Demonstrate An Adverse Employment Action

Next, Adecco argues that Plaintiff has established a mere technical violation of the ADA because she cannot demonstrate any adverse employment action. Adecco Opp. 8.

In *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 96 (2d Cir. 2003), the Second Circuit considered the nearly identical language of the ADA's post-employment prohibition on employer disability inquiries. *See* 42 U.S.C. § 12112(d)(4)(A) (prohibiting "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity"). There, the Second Circuit rejected a similar argument made by the defendant that the plaintiff had suffered "no injury" and so "lack[ed] standing." *Conroy*, 333 F. 3d at 93-94. The Court quoted a sister circuit, explaining "[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Id.* at 95 (quoting *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir.1997)).[6] Plaintiff need not provide evidence of any adverse employment action as a result of the inquiry on the application form.[7] While Adecco argues that here we have a pre-employment fact pattern and that makes all the difference, we see no difference.

### d. There Are Genuine Issues of Material Fact Regarding Whether Plaintiff Suffered Damages

A technical violation of the ADA "will not in and of itself give rise to damages liability." *Giaccio v. City of N.Y.*, 502 F. Supp. 2d 380, 387 (S.D.N.Y. 2007), *aff'd* 308 Fed. Appx. 470 (2d Cir. 2009); *see also Armstrong v. Turner Indus. Inc.*, 141 F.3d 554, 562 (5th Cir. 1998)

---

[6] Adecco's arguments that *Conroy* is distinguishable are unpersuasive. Adecco first argues that "*Conroy* involved an employer that sought an employee's medical information pursuant to its sick leave policy." Adecco Opp. 9. This argument again misses the point that employment agencies, like employers, are covered entities under the ADA. In addition, Adecco argues that the case was distinguishable because the employer refused to discontinue this policy, and that Adecco—unlike the employer in *Conroy*—had no control over Savoy or its application. Neither of these arguments persuades me that the Second Circuit's interpretation of the ADA's prohibition on medical inquiries does not apply equally to inquiries made pre-employment as it does to post-employment inquiries.

[7] Adecco's argument that I ought to follow *Green v. Joy Cone Co.*, 107 Fed. Appx. 278 (3d Cir. Aug. 12, 2004) is unpersuasive. The Court in *Green* held that Plaintiff lacked standing to sue because she had suffered no "actual damage (emotional, pecuniary, or otherwise)." *Id.* at 280. However, the Court explicitly noted that "a violation of § 12112(d) occurs at the moment an employer . . . asks an improper disability-related question, regardless of the results or response." *Id.* Here, in contrast, Plaintiff has provided some evidence of damages. *See* Section II.C.1.d.

5

("[D]amages liability under section 12112(d)(2)(A) must be based on something more than a mere violation of that provision."). The plaintiff in *Giaccio* alleged that he suffered "anxiety, embarrassment and damage to his reputation, including the inability to continue refereeing basketball games" due to dissemination of his positive drug test results. 502 F. Supp. 2d at 387.

Plaintiff has made a stronger showing of injury here in claiming to have suffered severe emotional distress, including "[i]ncreased anxiety and depression." Katz Dep. 147:9. She states that she "became reclusive," "became despondent," "stopped exercising," "could not sleep" and "felt that [her] chances of finding employment elsewhere [were] extremely limited if this question was allowed to be asked." *Id.* at 125:10-16. Katz began taking Valium multiple times per day and states that "defendants' actions have caused [her] stress that exacerbated eczema and psoriasis in her ears and scalp, which required medical attention" and needed to have her ears debrided and her ear canals suctioned. Pl. 56.1 ¶ 62; *see also* Katz Dep. 145-46. Adecco disputes the source of some of these symptoms, arguing that they arose out of Plaintiff's failure to obtain the position rather than the inquiry itself. Adecco Opp. 12-13. There is a genuine dispute of material fact regarding whether Plaintiff suffered damages as a result of the medical inquiry on Savoy's application form.

There are genuine issues of material fact regarding whether Adecco made a discriminatory inquiry in violation of the ADA and whether Plaintiff suffered damages. Plaintiff's motion for partial summary judgment and Adecco's cross-motion for summary judgment are denied on this claim.

### 2. Medical Inquiry Provisions under the NYCHRL

The NYCHRL prohibits covered entities from "declar[ing], print[ing] or circulat[ing]" any type of application for employment or making any inquiry in connection with prospective employment "which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . disability." N.Y.C. Admin Code § 8-107(1)(d). Aiding or abetting discriminatory conduct is also prohibited. *Id.* at § 8-107(6); *Tomko v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus, Inc. v. Ellerth*, 524 U.S. 742 (1998) (explaining that to establish that an entity is an aider or abettor, plaintiff must show that the defendant "actually participate[d] in the conduct giving rise to the discrimination claim").

### a. There Are Genuine Issues of Material Fact Regarding Whether Adecco Violated the Medical Inquiry Provisions of the NYCHRL

Plaintiff's motion for partial summary judgment and Adecco's cross-motion for summary judgment on Plaintiff's claim of a discriminatory inquiry in violation of the NYCHRL are both denied. There are genuine issues of material fact regarding whether Adecco "circulate[d]" or otherwise made an inquiry into Plaintiff's disability by encouraging Plaintiff to fill out the unlawful form over Plaintiff's protests and whether this inquiry was the expression of a limitation or discrimination on offered employment or expressed the intent to make such a limitation. N.Y.C. Admin Code § 8-107(1)(d). Alternatively, there are genuine issues of material fact regarding whether Adecco was an aider and abettor of Savoy's inquiry because Adecco "actually participate[d] in the conduct giving rise to the discrimination claim," *Tomko*, 66 F.3d at 1317, by circulating the application and encouraging Plaintiff to fill it out.

### b. There Are Genuine Issues of Material Fact Regarding Whether Savoy Violated the Medical Inquiry Provisions of the NYCHRL

Plaintiff's motion for partial summary judgment and Savoy's cross-motion for summary judgment on Plaintiff's claim of a discriminatory inquiry in violation of the NYCHRL are both denied. Although Savoy is not subject to the ADA, there is no dispute that Savoy is subject to the NYCHRL. There are genuine issues of material fact regarding whether Savoy's application expressed a limitation, specification or discrimination on employment or the intent to make any such limitation. N.Y.C. Admin Code § 8-107(1)(d), and Savoy is consequently liable as either a primary violator of the NYCHRL or an aider and abettor of Adecco's violation.[8]

There are similarly genuine issues of material fact regarding whether Lorenzo and Hazelton are individually liable for discrimination or whether they aided and abetted such discrimination. Hazelton created the application form and Lorenzo was intimately involved in hiring decisions. Pl. 56.1 ¶¶ 4-5, 9, 15-17; Adecco Counterst. ¶¶ 4-5 , 9, 15-17.

---

[8] The cases cited by Savoy are distinguishable. In *N.Y. Times Co. v. City of N.Y. Comm'n on Human Rights*, the New York Court of appeals affirmed the First Department's overturning of an administrative agency decision finding that a newspaper had violated the City Law by printing help-wanted ads for positions located in South Africa. 41 N.Y. 2d 345, 358-59 (1977) (concluding that "South Africa" was not a secret devise to exclude Black applicants, but referenced the job's geographic location). *Delta Air Lines v. N.Y.S. Div. of Human Rights*, is similarly distinguishable. 91 N.Y.2d 65, 75 (1997) (finding pre-employment questions were not discriminatory where they were "necessary, in part, to comply with FAA regulations"). Further, all of the cases cited by the Savoy Defendants on the inquiry provisions of the NYCHRL were issued before the amendments.

7

**D. Hiring Claims**

Plaintiff alleges that Adecco violated the ADA by "discriminate[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff claims that all Defendants violated the NYSHRL and NYCHRL provisions prohibiting discrimination by employers against disabled individuals in their hiring and prohibiting employment agencies from discriminating against disabled individuals "in receiving, classifying, disposing or otherwise acting upon applications for its services or in referring an applicant or applicants to an employer or employers." N.Y. Exec. Law § 296(1)(a)-(b); N.Y. Admin. Code § 8-107(1)(a)-(b).

The three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), applies to Plaintiff's claims of disability discrimination under state and city law as well as federal law. *Ghosh v. N.Y.C. Dep't of Health*, 413 F. Supp. 2d 322, 332 (S.D.N.Y. 2006); *Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08 Civ. 5454, 2011 WL 4530193, at *5 n.6 (S.D.N.Y. Sept. 30, 2011) (noting that disability claims under the NYSHRL and NYCHRL involve the same elements as under the ADA). Under this framework, Plaintiff must first establish a *prima facie* case, which requires: "(1) membership in a protected class, (2) qualification for the position sought, (3) an adverse employment action, (4) circumstances giving rise to an inference of discrimination." *Herschman v. City Univ. of N.Y.*, 2011 WL 1210209, at *10 (S.D.N.Y. Feb. 28, 2011) (quoting *Ghosh*, 413 F. Supp. 2d at 332). The burden to establish a *prima facie* case is "*de minimis*." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (internal quotation and citation omitted). There is no dispute that Plaintiff has satisfied the second and third elements of the test; however, Defendants argue that Plaintiff is not a member of a protected class because she is not disabled and that Plaintiff has failed to demonstrate circumstances giving rise to an inference of discrimination.

**1. There Are Genuine Issues of Material Fact Regarding Whether Plaintiff has Established a *Prima Facie* Case for Employment Discrimination**

**a. Plaintiff's Prior Cancer is Capable of Being Classified as a Disability Under the ADA, NYSHRL and NYCHRL**

Adecco argues that Plaintiff is not disabled under the ADA because her cancer was in remission at the time she applied for the position with Savoy. Adecco MSJ 10. Under the ADA,

8

"[t]he term 'disability' means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The definition includes disabilities that limit "major life activities" including "major bodily functions" such as "normal cell growth." *Id.* at § 12102(1)-(2)(B). Cancer will "virtually always" be a qualifying disability. 29 C.F.R. § 1630.2(j)(3)(ii)-(iii) (2011). Further, recent amendments to the ADA, which took effect January 1, 2009, add that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); *see also* 76 Fed. Reg. 16990 (2011) (explaining that since the Amendments individuals with cancer in remission should "easily" meet coverage requirements).

Because the ADA amendments are not retroactive, this Circuit has not reached the issue as to whether cancer in remission now qualifies as a disability; however, those courts that have addressed the issue have concluded that cancer in remission may qualify as a disability. *Norton v. Assisted Living Concepts Inc.*, 786 F. Supp. 2d 1173, 1185 (E.D. Tex. 2011) (finding that it was of "no consequence" that plaintiff's cancer was in remission at the time of his alleged discrimination and concluding that he was capable of being classified as disabled under the amended ADA); *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976, 985 (N.D. Ind. 2010) (concluding that plaintiff's cancer, which was in remission, constituted a disability under the clear language of the amended ADA); *see also Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 348 n.17 (E.D.N.Y. 2010) (explaining that a person is not substantially limited in a life activity where impairments were intermittent, but noting that the ADA amendments "modified" this provision). As a result of the amendments to the ADA, it appears not to matter that her cancer was in remission at the time of the alleged discrimination.

Although Adecco concedes that the definition of "disability" is even broader under the NYSHRL and NYCHRL than it is under the ADA, Adecco MSJ 10 n.2, Savoy argues that Plaintiff is not disabled within the meaning of these statutes. Savoy MSJ 6-7. Not so. Under the NYSHRL and NYCHRL, a disability includes an impairment of "normal bodily function," N.Y. Exec. Law § 292(21), or "an impairment of any system of the body," N.Y.C. Admin. Code § 8-102(16)(a)-(b) or "a record of such impairment." N.Y. Exec. Law. § 292(21); N.Y.C. Admin. Code § 8-102(16). Courts have concluded that, "The New York State Executive Law and the New York City Administrative Code have a broader definition of 'disability' than does the ADA;

neither statute requires any showing that the disability substantially limits a major life activity." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009) (citing *Giordano v. City of N.Y.*, 274 F.3d 740, 753 (2d Cir. 2001)). Plaintiff's breast cancer likely constitutes a "record" of an impairment that limited her "normal bodily function." There is a genuine issue of material fact regarding whether Plaintiff is disabled within the meaning of NYSHRL and NYCHRL.

### b. There Are Genuine Issues of Material Fact Regarding Whether Plaintiff has Presented Sufficient Evidence to Give Rise to an Inference of Discrimination

"An inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications [ ] or if the position was filled by someone not a member of plaintiff's protected class." *Green v. Harris Pubs., Inc.*, 331 F. Supp. 2d 180, 187 (S.D.N.Y. 2004) (internal quotation and citation omitted) (discussing establishment of a *prima facie* case in Title VII case). It is undisputed that Savoy ultimately hired a candidate with no known disabilities. Pl. Counterst. Adecco ¶ 56.

Adecco argues that Plaintiff cannot demonstrate an inference of discrimination because although Plaintiff revealed her history of cancer to Ehrlich, Savoy was unaware of her condition. Adecco MSJ 11. It is a disputed fact as to whether Savoy was aware of Plaintiff's cancer history when it decided not to hire her. As Plaintiff points out, a jury might conclude that "it is simply not credible that Ehrlich, an experienced recruiter, did not alert Savoy that Katz was an 'upset' candidate who explicitly complained about Savoy's 'totally illegal' behavior." Pl. Opp. 8.[9]

### 2. There Are Genuine Issues of Material Fact Regarding Whether Plaintiff's Disability was a Reason that She was Not Hired

Once a plaintiff establishes a *prima facie* case, the burden of going forward shifts to the defendant to "articulate a legitimate, clear, specific and nondiscriminatory reason" for its decision. *Green*, 331 F. Supp. 2d at 187 (citing *Quaratino v. Tiffany Co.*, 71 F.3d 58, 64 (2d Cir. 1995)).

Savoy articulates legitimate business reasons for not hiring Plaintiff: she failed an Excel proficiency test, Hazelton Dep. 185:4-8; there were concerns about her ability to be a team

---

[9] Adecco's argument that because the individual it hired had disclosed that she had a metal plate in her ankle, this undermines Plaintiff's *prima facie* case is without merit. Having a metal plate in one's ankle, on its own, does not render someone disabled under the ADA, and likely does not render someone disabled under NYSHRL or NYCHRL either.

player, *Id.* 222:11-13; Lorenzo Dep. 81:10-25, and her prior employer stated that he would not rehire her. Brody Decl. ¶ 10.

Once Savoy provides a legitimate reason for its failure to hire Plaintiff, Plaintiff must demonstrate that her disability was a motivating factor in the decision not to hire her. *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 344 (S.D.N.Y. 2010).  Plaintiff must prove that the "false" reasons were pretextual and intended to mask discrimination. *Reeves*, 530 U.S. at 143.  The court must consider "the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is entitled to view the evidence as a whole." *Green*, 331 F. Supp. 2d at 188 (internal quotation and citation omitted).  "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive." *Reeves*, 540 U.S. at 134.

Viewed in a light most favorable to Plaintiff, as I must, there are genuine issues of material fact regarding whether Plaintiff's disability was a reason that she was not hired. Plaintiff presents evidence suggesting that each of the reasons offered by Savoy for hiring a different candidate was pretextual.  Plaintiff states that she was told explicitly by Hazelton that she passed the excel test that Hazelton now claims she failed. Pl. Counterst. Adecco ¶ 43; Katz Aff. ¶ 5.  In response to Savoy's alleged concerns that Plaintiff would not be a good team player because she had primarily worked in a "one-to-one" set-up, Katz explains that Savoy knew this from her first interview, yet interviewed her two more times. Pl. Counterst. Adecco ¶¶ 100, 121. In addition, the candidates Savoy extended offers to included one who had worked for a single individual in an office with just two other employees and another whose sole experience was working for one individual since 1980. *Id.* ¶¶ 124, 131.  Finally, Plaintiff clarifies that the "negative" reference that her former employer allegedly gave her was that he would not rehire Plaintiff because he "no longer had the need for a secretary with the broad skill set that Ms. Katz provided" and he would not wish to rehire someone who was "unhappy" working for him. Brody Decl. ¶ 10.  Based on the evidence presented by Plaintiff, there are genuine issues of material fact regarding whether these proffered reasons were mere pretext meant to cover the true reason for Savoy's failure to hire Plaintiff—her history of breast cancer and likely to a fear that it would recur.

### 3. There Are Genuine Issues of Material Fact Regarding Whether Plaintiff Suffered Damages

Adecco again argues that Plaintiff has failed to present evidence of damages. Adecco MSJ 14.  As indicated above, this is the rule in the Second Circuit. *Giaccio*, 502 F. Supp. 2d at 387.  For essentially the same reasons stated in Section II(C)(1)(d), there are genuine issues of material fact regarding whether Plaintiff suffered damages.

### 4. It is Immaterial that Adecco was not Plaintiff's Employer

As with Plaintiff's discriminatory inquiry claim, Adecco argues that it is entitled to summary judgment because it was not Plaintiff's employer. Adecco MSJ 3-7.  This argument fails again.  Plaintiff does not argue that Adecco is liable as an employer, but rather that it is liable as an employment agency, a separate covered entity under the ADA. 42 U.S.C. § 12111(2).  Employment agencies are liable for discriminatory hiring practices under both NYSHRL and NYCHRL. N.Y. Exec. Law § 296(1)(a)-(b); N.Y.C. Admin. Code § 8-107(1)(b).

Although Adecco argues that it should not be held liable for Savoy's alleged actions, Plaintiff seeks to hold Adecco accountable for its own "acts and omissions," *Olsten*, 657 F. Supp. 2d at 1038.  The ADA clarifies that the term "discriminate against a qualified individual on the basis of a disability" includes "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency. . . ." 42 U.S.C. § 12112(a),(b)(2).  A central issue here is whether Adecco participated in a relationship with Savoy that had the effect of subjecting Plaintiff to Savoy's discrimination under the ADA.  Likewise, under the NYSHRL and NYCHRL, employment agencies are responsible for discriminatory hiring practices and as aiders and abettors of such unlawful conduct. N.Y. Exec. Law § 296(6); N.Y. Admin. Code § 8-107(6).

Consequently, Adecco's motion for summary judgment as to Plaintiff's claims of discriminatory hiring is denied and Savoy's motion for summary judgment as to Plaintiff's discriminatory hiring claims under the NYCHRL and NYSHRL are denied.

### E.  Retaliation Claims

Plaintiff also states that all Defendants retaliated against her.  Under the ADA, it is unlawful for an employer to "discriminate against any individual because such individual has

opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  NYSHRL and NYCHRL contain similar provisions. N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7).

### 1. There Are Genuine Issues of Material Fact Regarding Whether Plaintiff has Established a *Prima Facie* Case of Retaliation

A three-step burden-shifting analysis also applies to retaliation claims.  To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) Defendants were aware of this activity, (3) they took adverse employment action against her, and (4) a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Malius*, 313 F.3d 713, 719 (2d Cir. 2002) (applying same standard to state and federal claims); *Alexander v. City of N.Y.*, No. No. 02 Civ. 3555, 2004 WL 1907432, at *22 (S.D.N.Y. Aug. 25, 2004) (analyzing city retaliation claims under the same standard).  Plaintiff need not demonstrate that the underlying conduct that she complained about was actually unlawful as long as she shows that "[s]he possessed a good faith, reasonable belief" that the underlying conduct violated the law. *Treglia*, 313 F.3d at 719 (internal quotation and citation omitted).  "A close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation, without direct evidence in support." *Parrish v. Sollecito*, 258 F. Supp. 2d 264, 268 (S.D.N.Y. 2003).

There are genuine issues of material fact regarding whether Plaintiff has established a *prima facie* case of retaliation as to both Savoy and Adecco.  As to Savoy, there are disputed facts over whether Savoy knew of Plaintiff's complaints and whether the rejection of Plaintiff was in retaliation for her complaints.  As to Adecco, there are genuine issues of material fact regarding whether Adecco retaliated against Plaintiff by "failing to offer her appropriate job opportunities following her complaints of discrimination." Pl. Opp. 13.  There is a disputed fact over whether Adecco presented Plaintiff with an appropriate opportunity one week after she complained of discrimination.  Plaintiff claims that this opportunity was inappropriate, as it was for a position as a personal assistant to a socialite. Pl. Counterst. ¶ 91.  Adecco claims that offering Plaintiff this opportunity demonstrates that Adecco did not retaliate against her. Adecco MSJ 16.

### 2. There Are Genuine Issues of Material Fact Regarding Whether Defendants Retaliated Against Plaintiff

If a plaintiff establishes a *prima facie* case, defendants must articulate a legitimate, non-retaliatory reason for the alleged adverse action. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *cert. denied*, 534 U.S. 951 (2001).

As in Section II.D.2., there are genuine issues of material fact regarding whether Savoy's business reasons for its failure to hire Plaintiff were a pretense intended to cover up the real reason, *i.e.*, the complaint that the Savoy application form was unlawful.

Similarly, there is a disputed issue as to whether Adecco's stated reason for failing to contact Katz with positions after she complained about the Savoy application form—that Ehrlich contacted Plaintiff repeatedly and Plaintiff only responded to one of her calls, Katz Dep. 130-132—was false. Plaintiff argues that recruiters often contact candidates despite the candidate not returning every communication. Further, after Plaintiff rejected the allegedly inappropriate opportunity, Ehrlich never provided another hiring opportunity, although Ehrlich continued to place candidates in positions that may well have been appropriate for Plaintiff. Ehrlich Dep. 221-22.

For the reasons stated above, Adecco's motion for summary judgment as to Plaintiff's claims of retaliation is denied and Savoy's motion for summary judgment as to Plaintiff's retaliation claims under the NYCHRL and NYSHRL are denied.

### F. Plaintiff's Demand for Punitive Damages Survives

Savoy argues that Plaintiff's demand for punitive damages under the NYCHRL ought to be struck because Hazelton, who constructed the form, had no idea that it was objectionable at the time he created it. Savoy MSJ 8.

The NYCHRL provides for an award of punitive damages. N.Y.C. § Admin. Code 8-502(a). Punitive damages are not avoided as a matter of law unless the employer shows (1) that the unlawful conduct was perpetrated "solely" by an employee, agent, or independent contractor; and (2) that during the relevant time period, the employer implemented and complied with anti-discrimination "policies, programs, and procedures" established by the New York City Human Rights Commission. *Id.* at 8-107(13)(f); *Thompson v. Am. Eagle Airline, Inc.*, No. 09 Civ. 4529, 2000 WL 1505972, at *10 (S.D.N.Y. Oct. 6, 2000). Savoy cannot satisfy either prong, both of

which are required in order to avoid punitive damages under the Code, and so avoid punitive damages as a matter of law.

The Savoy Defendants also argue that the federal and city standards for awarding punitive damages ought to be interpreted similarly. Savoy MSJ 9.  Although there is some support for this position in the case law, these cases are distinguishable from this case, as explained below, and were decided prior to the Local Civil Rights Restoration Act of 2005, which requires that the NYCHRL be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal . . . laws, including those laws with provisions comparably-worded to provisions of the title, have been so construed." N.Y.C. Admin. Code § 8-130.  While the Circuit has not ruled on the issue, the one Southern District case to consider the issue concluded that the inquiries are "wholly separate." *Gabel v. Richards Spears Kibbe & Orbe LLP*, No. 07 Civ. 11031, 2009 WL 1856631, at *2 (S.D.N.Y. 2009) (citing *Thompson*, 2000 WL 1505972, at *10-11).

The cases where courts concluded that punitive damages standards are the same under federal and city law were not cases where the statutes were incompatible, as they are here. *Thompson*, 2000 WL 1505972, at *11 (explaining that "the analysis under federal anti-discrimination laws cannot be used in those cases where the statutes differ"); *see also Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101-02 (2d Cir. 2001) ("*Thompson* addresses the inapplicability of a federal framework for analyzing local claims when a standard set forth in the state or local statute is incompatible with the federal standard; it does not inform the analysis when the local statute is silent as to the applicable standard.").[10]

---

[10] *Weisman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224 (2d Cir. 2004) is also distinguishable.  There, the court applied the federal standard for punitive damages under City Law in a disability case, but explained, "we need not decide what the appropriate standard is because the parties appear to agree that the propriety of the award of punitive damages should be judged under the federal rule used by the ADA." *Id.* at 235.

15

## CONCLUSION

Plaintiff's motion for partial summary judgment is DENIED and Adecco's motion for summary judgment is DENIED. Savoy Defendants' motion for summary judgment is GRANTED to the extent that Plaintiff's First and Fourth causes of action, alleging violations of the ADA, are dismissed with prejudice; it is DENIED in all other respects. The Clerk of the Court is directed to close the three open motions and remove them from my docket.

**SO ORDERED.**

New York, New York
January 10, 2012

_____
Hon. Harold Baer, Jr.
U.S.D.J.